IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 7:22cr00036 |
| | ) |
| KELLY GIVENS | ) |

**MEMORANDUM OPINION AND ORDER**

Kelly Givens pleaded guilty to one count of an Information charging her with misapplication of bank funds from around March 2017 to July 2020 as an officer and agent of FedStar Federal Credit Union (FedStar), with intent to injure FedStar, in an amount more than $1,000, in violation of 18 U.S.C. § 657. Specifically, Givens, who was then CEO of FedStar, used FedStar funds to pay for personal items she purchased using FedStar's Amazon account and using a Paypal account linked to a FedStar credit card. Givens concedes that these personal purchase amounts were greater than $12,000. The United States initially totaled personal credit card purchases much higher than $12,000, but it now agrees that most of the purchases were not for personal use but were for FedStar purposes (furnishings and equipment for offices, gifts for Board members, and door prizes for meetings). The United States now asserts, given the hearing testimony, that the amount is approximately $10,000. This was the only charge in any charging document. The plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), provides for a binding period of incarceration of 4 to 24 months and was taken under advisement.[1]

The Presentence Investigation Report (PSR) (Dkt. No. 37) calculated a total offense level of 23. The base offense level is listed as 7 with an 8-level enhancement (for a loss more than

---

[1] The plea agreement also provided that "all matters pertaining to any of the counts of the charging document(s), including any dismissed counts, are relevant conduct for purposes of sentencing," however, as noted, there is only one count.

$95,000 but less than $150,000), a 2-level enhancement for sophisticated means, a 7-level enhancement for jeopardizing the safety and soundness of a financial institution, and a 2-level enhancement for abuse of a position of trust. The level was then reduced by 3 for acceptance of responsibility. Combined with her criminal history category of I, the offense level of 23 resulted in an advisory sentencing guideline range of 46 to 57 months. Both parties filed objections.

On January 31, 2024, the court held the first part of Givens' sentencing and heard evidence regarding objections to the PSR. Following the hearing, the parties submitted briefs. The objections are addressed herein.[2]

## I. RELEVANT CONDUCT

### A. Parties' Positions on Relevant Conduct

The United States agrees with the offense level calculations in the PSR and argues that Givens engaged in a sophisticated scheme to defraud FedStar and its members by artificially inflating its net worth to make it appear that it nearly doubled in size in five years. It contends that, consequently, no one looked too closely to determine that its actual financial status was grim — ultimately leading to the failure and forced merger of FedStar in June 2021. Per the government and testimony from its witnesses, Givens underfunded and/or misstated the Allowance for Loan and Lease Losses (ALLL) account; failed to charge off delinquent loans; reported negative liabilities; issued unsecured loans over policy limits; employed weak internal controls; and miscategorized non-member deposits. At times and using her own initials, she made adjusting entries on the general ledger noting "to correct G/L,"[3] and provided financial

---

[2] The parties were asked to include in the post-hearing briefing any pending factual objections. While the United States included argument about defendant's factual objections, it did not include any pending factual objections that it had. Givens' briefing included guideline objections but no other pending factual objections.

[3] The government acknowledges that these general ledger entries did not concern the use of funds for Givens' personal purchases.

records to the Board of Directors that differed from the records provided to the National Credit Union Administration (NCUA) on call reports. The government also asserts that Givens stacked the Board of Directors with family and friends.[4]

Givens argues that she was woefully unprepared for the job of CEO and acted with the knowledge of and upon the advice of others, including the NCUA regulatory personnel. She objects to the PSR's offense level calculations. She asserts that the government has not met its burden to show that the alleged scheme to defraud qualifies as relevant conduct and that, even if the scheme is relevant conduct, the government failed to prove the scheme and failed to prove that the objectionable loss amounts or enhancements apply. She contends that the only applicable enhancements are a 2-level enhancement for a loss more than $6,500 but less than $15,000 and a 2-level enhancement for abusing a position of trust. Under her calculation, her adjusted offense level is 11, and the total offense level is 9, resulting in an advisory guideline range of 4 to 10 months.

**B. Relevant Conduct and Expanded Relevant Conduct**

Pursuant to the Sentencing Commission Guidelines, defendants can be held responsible for relevant conduct at sentencing, provided the government proves relevant conduct by a preponderance of the evidence. *United States v. McGee*, 736 F.3d 263, 271 (4th Circ. 2013); *United States v. Pontier*, 158 F. App'x 398, 400 (4th Cit. 2005). Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or

---

[4] The evidence at the first hearing clearly showed that FedStar had trouble finding Board members. This led Givens and other Board members to recruit persons willing to serve. Moreover, there was no evidence that the Board members recruited by Givens took any action or failed to take action because of any relationship.

responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). It does not appear that the government is arguing that this section applies to Givens' conduct. Indeed, there was no cover-up involving Givens' personal purchases. The records of these purchases were available to all FedStar employees. Additionally, witness Michael Copen, former field examiner with the NCUA, testified that the financial statements and general ledger adjustments did not conceal any personal purchases made on the FedStar credit card.[5] Other than the credit card purchases for Givens' personal items, there was no money trail from FedStar to Givens personally. Instead, the government seeks to hold Givens responsible for expanded relevant conduct pursuant to Section 1B1.3(a)(2).

To hold Givens responsible for conduct outside the offense of conviction (or expanded relevant conduct), the offense of conviction must first be one that would be grouped under Section 3D1.2(d), but this provision does not require multiple counts of conviction. U.S.S.G. § 1B1.3(a)(2), cmt. n. 5(A). Givens' offense meets that qualification. Next, the court can consider Givens' acts and omissions that were part of "the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). The government relies upon this provision.

It is unclear whether the government is contending that the purported relevant conduct is part of the same course of conduct, a common scheme or plan, or both. It contends that all of Givens' actions obscured the financial health of FedStar such that its Board of Directors and regulators thought that FedStar was thriving. This skewed picture caused them to think Givens was doing a good job as CEO and prevented them from looking too closely as she embezzled

---

[5] The court is unpersuaded by the government's suggestion that Givens' scheme involved a cover-up merely because it worked and because persons in authority did not initially discover it. Notably, the FedStar employees discovered the unlawful credit card use and there was no evidence of an attempt by Givens to hide it.

about $10,000 and led the Board to increase her salary and give her bonuses. It also caused the downfall of FedStar, according to the government.

Offenses are considered to be the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, cmt. n. 5(B)(ii). Factors to be considered include the degree of similarity of offenses, regularity of offenses, and the time interval between the offenses. *Id*. All factors need not be present, but if one is absent, then others must be stronger. *Id*. For two or more offenses to qualify as a common scheme or plan they must be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n. 5(B)(i).

The parties cite several cases. The United States asserts that *United States v. Lange*, 592 F.3d 902 (8th Cir. 2010), is instructive. There, the appellate court agreed that commissions earned by defendant as a program commission salesman were properly included in a loss amount for embezzled credit union funds because the court concluded that defendant "had a common purpose, a common victim, and a common *modus operandi*, and that [the conduct] occurred regularly over a relatively short period of time." (Dkt. No. 47 at 8.) But *Lange* stands for the rather unremarkable holding that when a defendant is convicted of one count of embezzling from a credit union, all monies embezzled from the credit union constitute the total loss amount. Lange appealed because he wanted the court to deduct what he contended were properly earned commissions from the total loss. The court refused to do so when it was clear that defendant started taking commissions before he had responsibility for the program or had earned any commissions.

Givens cites to *United States v. Mullins*, 971 F.2d 1138 (4th Cir. 1992). Defendant Mullins, who pled guilty to one count of aiding and abetting his brother in the commission of wire fraud involving defrauding a businessman of kitchen equipment, was also involved in assisting his brother in a scheme to defraud life insurance companies over six months earlier. The crimes were committed by the same three people, and Mullins aided his brother in the commission of frauds. The district court included the insurance fraud as relevant conduct, but the Fourth Circuit reversed. It held that offenses were not part of the same course of conduct or common scheme or plan. *Id*. at 1145. The Court of Appeals noted that a general scheme of assisting a sibling with fraud was a scheme so general "as to eviscerate the evaluation" of the conduct. *Id*. at 1145. It also distinguished "the kind of property to be obtained and the method of doing so, the type of victim to be defrauded, the general *modus operandi* of the criminal activity, and the actual conduct engaged in by the defendant." *Id*.

Here, we have no additional embezzled funds, unlike *Lange*, and we have a closer call than in *Mullins*. With regard to the same course of conduct, the evidence presented certainly shows an ongoing series of embezzlements, and Givens has agreed that all those amounts should be considered in the loss amount. To the extent the government argues that the amounts involved in the purported scheme to inflate the net worth of FedStar are part of the same course of conduct, which is not clear to the court, the question is whether the embezzlement is "sufficiently connected or related to" that scheme "to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, cmt. n. 5(B)(ii). While the time period of the offenses overlaps at least in part, the offenses are not sufficiently connected or related and are not sufficiently similar. Indeed, witness Michael Luvera, Director of Special Actions for the Eastern Region of the NCUA, testified that he could not say there was

6

evidence of financial fraud in terms of theft except regarding the credit card purchases. Furthermore, any scheme to inflate the net worth of FedStar did not allow or facilitate the embezzlement, and the embezzlement required no proof of a scheme.

The government plainly argues that the purported relevant conduct was part of a common scheme or plan. To constitute relevant conduct under this portion of the guideline, the offenses must be "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, cmt. n. 5(B)(i). FedStar is, of course, the only victim, but the purpose and *modus operandi* are different. The purpose of the embezzlement was to use FedStar money for Givens' personal benefit, and she conducted the theft by charging personal items to the FedStar credit card. According to the government, the scheme to inflate the net worth was carried out by underfunding and/or misstating the ALLL account, failing to charge off delinquent loans, reporting negative liabilities, issuing unsecured loans over policy limits, employing weak internal controls, and miscategorizing non-member deposits. This *modus operandi* is in no way similar to Givens' embezzlement.

Regarding a common purpose, the government initially contended that the scheme prevented the Board of Directors and regulators from looking too closely to determine that FedStar's actual financial status was grim—ultimately leading to the failure and forced merger of FedStar in June 2021. According to the United States in its rebuttal brief, Givens' goal was to keep the Board of Directors and regulators from looking too closely at her embezzlement, while also furthering her own merit increases and bonuses, as well as an image of a successful CEO. There was, however, no evidence presented showing how the scheme in any way prevented anyone from looking at or discovering embezzlement or any evidence regarding receipt of merit

increases and/or bonuses by Givens.

Simply put, the uncharged scheme to misrepresent and artificially inflate FedStar's net worth, even if it could be proven by a preponderance of the evidence, does not meet Section 1B1.3's definition of relevant conduct. Thus, it will not be considered by the court in determining Givens' offense level or guideline range.

## II.  SAFETY AND SOUNDNESS ENHANCEMENT

The PSR applies a 7-level enhancement pursuant to Sections 2B1.1(b)(17)(B)(i) and (D). Those provide for, respectively, a 4-level enhancement if the offense substantially jeopardized the safety and soundness of a financial institution or a greater enhancement to level 24 if the level under subdivisions (A) or (B) is less than 24. In the PSR, the 7-level enhancement brought the offense level up to 24. Application Note 14(A) instructs that the court, in determining whether the safety and soundness of a financial institution was substantially jeopardized, should consider whether the institution became insolvent, reduced benefits to pensioners, was unable to refund fully deposits, payments, or investments, was so depleted as to be forced to merge with another institution, or was likely to suffer the above but avoided it because of a bailout.

The government argues that this enhancement, up to a level 24, applies for jeopardizing the safety and soundness of FedStar even if the court does not consider the scheme as relevant conduct. It asserts that the loss of approximately $10,000 jeopardized FedStar's precarious financial condition and that Givens need not be the sole cause of FedStar's insolvency to apply the enhancement. The government relies on *United States v. Kachkar*, No. 19-12685, 2022 WL 2704358, at *9 (11th Cir. July 12, 2022), and *United States v. Said*, 334 F. App'x 20, 21 (7th Cir. 2009). *Kachkar* and *Said* both state that a defendant's conduct need not be the sole cause of insolvency to apply the enhancement, but both cases relied upon evidentiary support from an

8

FDIC agent, and from a defense expert in *Kachkar* and a federal bank examiner in *Said* regarding the substantial jeopardy suffered by those financial institutions. *Kachkar*, 2-22 W: 2704358 at *9; *Said*, 334 F. App'x at 21.

Witness Gary Luvera testified that the cause of FedStar's failure was the $ 1.2 million of general ledger entry adjustments that were made by and initialed by Givens. He did not attribute the failure to the credit card purchases. Thus, here, that evidentiary support is lacking to show that the credit card purchases contributed to the failure. The enhancement will not be applied.

### III.  SOPHISTICATED MEANS ENHANCEMENT

To the extent the government is arguing that the 2-level sophisticated-means enhancement should apply to the offense of conviction, the court finds that no sophisticated means were used and will not apply this enhancement. Givens purchased personal items on the FedStar card, and the records were available for review by FedStar employees with no attempt to disguise the crime.

### IV.  LOSS AMOUNT

The government totals the loss amount at $82,488.72 for a 6-level increase under Section 2B1.1(b)(1)(D). This includes $10,000 for credit card purchases and amounts for loans and audit expenses. Because of the court's ruling regarding relevant conduct, the court calculates the loss amount at $10,000 for a 2-level enhancement.

### V.  CONCLUSION AND ORDER

Given the above rulings, Givens' objections to the advisory guideline range calculations are SUSTAINED. The total offense level is a 9, and with a criminal history category of I, the

advisory guideline range is 4 to 10 months. The court directs the Probation Office to amend the PSR accordingly prior to sending it to the Bureau of Prisons.

    Entered: June 10, 2024.

                                                           */s/ Elizabeth K. Dillon*
                                                           Elizabeth K. Dillon
                                                           United States District Judge